Slip Op. 10-27

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |  |
|---|---|---|---|
| NEREIDA TRADING CO., INC., | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Before: | WALLACH, Judge |
| v. | : | Court. No.: | 06-00194 |
| | : | | |
| UNITED STATES, | : | | |
| | : | | |
| Defendant. | : | | |

[Defendant's Motion to Dismiss Plaintiff's third and fourth causes of action is GRANTED.]

Dated: March 12, 2010

Stein Shostak Shostak Pollack & O'Hara, LLP (Elon A. Pollack and Juli C. Schwartz) for Plaintiff Nereida Trading Co., Inc.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Civil Division, U.S. Department of Justice (Edward F. Kenny and David S. Silverbrand); Chi S. Choy, Office of the Chief Counsel, U.S. Customs and Border Protection, Of Counsel; and David Richardson, Department of Commerce, Office of the Chief Counsel, Import Administration, Of Counsel, for Defendant United States.

**OPINION**

**Wallach, Judge:**

# I
# INTRODUCTION

Plaintiff Nereida Trading Co., Inc. ("Nereida") challenges the imposition of antidumping duties on a single entry of frozen fish fillets from the Socialist Republic of Vietnam ("the subject entry"). Pursuant to U.S. Court of International Trade Rule 12(b)(5), Defendant United States ("Defendant") has moved to dismiss the third and fourth causes of action in Nereida's Complaint

"for failure to state a claim upon which relief can be granted." Defendant's Memorandum in Support of Its Motion to Dismiss ("Defendant's Memo") at 1; see Defendant's Motion to Dismiss ("Defendant's Motion"). These causes of action are based on the Fifth Amendment of the U.S. Constitution and the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. ("APA"). Because Nereida has not pled facts that show a deprivation of constitutional due process and has not demonstrated that its facts support an independent right of action under the APA, Defendant's Motion is GRANTED and Nereida's third and fourth causes of action are DISMISSED.

## II
## BACKGROUND

Nereida imported the subject entry in early 2003. Nereida alleges that this entry arrived on or before January 30, 2003, Complaint ¶ 11, but Defendant avers that this entry arrived on February 2, 2003, Answer to Complaint ("Answer") ¶ 11.[1] The supplier of this entry was a company known as Mekonimex. Complaint ¶ 9; Answer ¶ 9.[2]

On January 31, 2003, the U.S. Department of Commerce ("Commerce") announced its preliminary determination "that certain frozen fish fillets from . . . Vietnam are being, or are

---

[1] In the Answer, Defendant requested leave to delay its specific answer to the third and fourth causes of action until resolution of its motion to dismiss those causes of action. See Answer ¶¶ 43-61. This request is GRANTED. Defendant need not specifically answer those causes of action, as they are dismissed.

[2] Mekonimex is the company alternatively referred to as Mekong Fish Company, Mekongfish Company, and Mekong Industries Joint Stock Company. See Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Notice of Preliminary Results and Partial Rescission of the Third Antidumping Duty Administrative Review, 72 Fed. Reg. 53,527, 53,528 (September 19, 2007); Notice of Amended Final Results of Antidumping Duty Administrative Review: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 72 Fed. Reg. 23,800, 23,801 (May 1, 2007).

2

likely to be, sold in the United States at less than fair value." Notice of Preliminary Determination of Sales at Less Than Fair Value, Affirmative Preliminary Determination of Critical Circumstances and Postponement of Final Determination: Certain Frozen Fish Fillets From the Socialist Republic of Vietnam, 68 Fed. Reg. 4,986, 4,986 (January 31, 2003) ("Preliminary Determination"). Commerce accordingly stated that it would direct U.S. Customs and Border Protection ("Customs") to "suspend liquidation of all imports of subject merchandise, entered . . . for consumption on or after" January 31, 2003 and to "require a cash deposit or posting of a bond equal to the estimated preliminary dumping margins." Id. at 4,997. The preliminary weighted-average margin for Mekonimex was 49.16 percent. Id. Commerce subsequently reduced this margin to 36.76 percent. See Notice of Amended Preliminary Antidumping Duty Determination of Sales at Less Than Fair Value: Certain Frozen Fish Fillets From the Socialist Republic of Vietnam, 68 Fed. Reg. 10,440, 10,443 (March 5, 2003) ("Amended Preliminary Determination").

  Although Commerce also announced a preliminary finding of critical circumstances with respect to some suppliers, this finding did not extend to Mekonimex. See Preliminary Determination, 68 Fed. Reg. at 4,996; Amended Preliminary Determination, 68 Fed. Reg. at 10,444; Notice of Affirmative Preliminary Determination of Critical Circumstances for Voluntary Section A Respondents: Certain Frozen Fish Fillets From the Socialist Republic of Vietnam, 68 Fed. Reg. 31,681, 31,682 (May 28, 2003). A finding of critical circumstances could have triggered the retroactive imposition of antidumping duties on merchandise imported in the 90 days prior to January 31, 2003. See 19 C.F.R. § 351.206(a); Preliminary Determination, 68 Fed. Reg. at 4,985.

In August 2003, Commerce announced that it would direct Customs to assess antidumping duties on "all unliquidated entries of certain frozen fish fillets from Vietnam entered . . . for consumption on or after January 31, 2003." Notice of Antidumping Duty Order: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 68 Fed. Reg. 47,909, 47,909 (August 12, 2003) ("AD Order"). The estimated weighted-average margin for Mekonimex was 45.55 percent. Id. at 47,910. Because of a negative critical circumstances determination by the U.S. International Trade Commission, Commerce also announced that it would "instruct Customs to lift suspension and to release any bond or other security, and refund any cash deposit made, to secure the payment of antidumping duties with respect to entries of the merchandise entered . . . for consumption on or after November 2, 2002, but before January 31, 2003." Id. at 47,909.

One year after the AD Order, Commerce announced the opportunity to request an antidumping duty administrative review for the period "1/31/03-7/31/04." Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review, 69 Fed. Reg. 46,496, 46,497 (August 3, 2004). The following month, Commerce announced that administrative review requests for several suppliers, including Mekonimex, had been received for that period. Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 69 Fed. Reg. 56,745, 56,745 (September 22, 2004).

In January 2005, Commerce announced that it was rescinding its administrative review of four suppliers, including Mekonimex, "for the period January 1, 2003, through July 31, 2004." Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Rescission, in Part, of Antidumping Duty Administrative Review, 70 Fed. Reg. 4,092, 4,092 (January 28, 2005).

Accordingly, Commerce would "direct [Customs] to assess antidumping duties for these companies at the cash deposit rate in effect on the date of entry for entries during the period. . . ." Id. Commerce also reminded "importers of their responsibility under [19 C.F.R. § 351.402(f)] to file a certificate regarding the reimbursement of antidumping duties prior to liquidation of the relevant entries during this period of time. Failure to comply with this requirement could result in the [Commerce] Secretary's presumption that reimbursement of antidumping duties occurred and subsequent assessment of double antidumping duties." Id.[3]

Commerce transmitted liquidation instructions to Customs in February 2005. See U.S. Department of Commerce, Message 5038203 (February 7, 2005) ("Liquidation Instructions"). These instructions directed Customs to liquidate "all shipments of certain frozen fish fillets from . . . Vietnam" that had been produced or exported by one of the four suppliers and "entered . . . for consumption during the period 01/01/2003 through 07/31/2004." Id. at 1 (capitalization modified). The following month, Commerce issued an administrative message stating that the "correct period should be 01/31/03 through 07/31/04." U.S. Department of Commerce, Admin Msg. 05-0328 (March 24, 2008) (capitalization modified).

The liquidation instructions further directed Customs to "assess an antidumping liability equal to the amount of the bond or cash deposit required at the time of entry." Liquidation Instructions at 1 (capitalization modified). Finally, the instructions provided that:

---

[3] 19 C.F.R. § 351.402(f), which was promulgated by Commerce, has three parts relevant to this action. First, importers "must" certify to Customs prior to liquidation whether an exporter or producer has agreed to pay or reimburse the relevant antidumping duties. 19 C.F.R. § 351.402(f)(2). Second, Commerce "may" presume from the failure to file such a certification that the exporter or producer has paid or reimbursed those duties. Id. § 351.402(f)(3). Third, Commerce "will" reduce the export price by the amount that the exporter or producer has paid or reimbursed. Id. § 351.402(f)(1)(i).

5

> [u]pon assessment of antidumping duties, Customs should require that the importer provide a reimbursement statement as described in [19 C.F.R. § 351.402(f)]. The importer should provide the reimbursement statement prior to liquidation of the entry. If the importer has been reimbursed antidumping duties, Customs should double the antidumping duties due in accordance with the above-referenced regulation. Additionally, if the importer fails to respond to your formal request (via CF 28 or 29) for the reimbursement statement prior to liquidation, Customs should presume reimbursement and double the antidumping duties due.

Id. (capitalization modified).

Customs issued a CF 29 Notice of Action to Nereida in April 2005 ("Notice of Action"). See Complaint ¶ 16; Answer ¶ 16. The Notice of Action indicated that the subject entry was entered on February 2, 2003 and was covered by the AD Order. See Complaint ¶ 16; Answer ¶ 16. It also proposed an antidumping duty margin of 49.16 percent. See Complaint ¶ 16; Answer ¶ 16. Customs liquidated the subject entry in June 2005. See Complaint ¶ 17; Answer ¶ 17. Because Nereida had not filed a certificate of non-reimbursement prior to that time, Customs doubled the assessed duty margin to 98.32 percent. See Complaint ¶¶ 17-18; Answer ¶¶ 17-18.

Nereida subsequently filed a certificate of non-reimbursement and a timely protest challenging three aspects of the liquidation process. See Complaint ¶ 20, Answer ¶ 20. First, Nereida argued that the assessment of antidumping duties was erroneous because the subject entry "arrived in the Los Angeles Port limits on or before . . . January 30, 2003 and was released . . . by Customs that same day." Complaint ¶¶ 11, 26, 37. Second, Nereida argued that even if the assessment of duties was correct, the proper margin was 45.55 percent rather than 49.16 percent. See id. ¶¶ 17, 26. Third, Nereida argued that both the presumption of reimbursement and the resulting doubling of duties were no longer proper because Nereida filed a certificate of non-reimbursement within the protest period and was never actually reimbursed for the duties

that it paid. See id. ¶¶ 17, 18, 37. Customs denied Nereida's protest at the end of 2005. See id. ¶ 4; Answer ¶ 4.

Nereida thereafter commenced this action under 28 U.S.C. § 1581(a) and asserted four "causes of action" in its Complaint, each of which encompasses one or more specific claims involving determinations attributed to Customs. See Complaint ¶¶ 3, 23-62. The first cause of action ("incorrect liquidation") challenges the assessment of antidumping duties and the selection of the antidumping duty margin. See id. at 4, ¶¶ 31-33. The second cause of action ("incorrect duty assessment") and the third cause of action ("due process violation") both challenge the presumption of reimbursement and the doubling of antidumping duties. See id. at 5, 7, ¶¶ 42, 52. The fourth cause of action ("APA violation") challenges the assessment of antidumping duties, the selection of the antidumping duty margin, the presumption of reimbursement, and the doubling of antidumping duties. See id. at 8, ¶¶ 57-61.

Defendant admitted jurisdiction under 28 U.S.C. § 1581(a), see Answer ¶ 3, and moved to dismiss the third and fourth causes of action "for failure to state a claim upon which relief can be granted," Defendant's Memo at 1.

## III
## STANDARD OF REVIEW

In deciding a motion to dismiss, "the Court assumes that 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" United States v. Islip, 22 CIT 852, 854, 18 F. Supp. 2d 1047 (1998) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). "Dismissal for failure to state a claim upon which relief can be granted is proper if the plaintiff's factual allegations are not 'enough to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true

(even if doubtful in fact).'" Int'l Custom Prods. v. United States, 549 F. Supp. 2d 1384, 1389 (CIT 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); cf. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).

# IV
# DISCUSSION

Nereida and Defendant agree that 28 U.S.C. § 1581(a) provides jurisdiction over Nereida's claims. See Complaint ¶ 3; Answer ¶ 3.[4]  Because Nereida has not pled facts that show a deprivation of constitutional due process, its third cause of action fails to state a claim for which relief can be granted. See infra Part IV.A.  Because Nereida has not demonstrated that its facts support an independent APA right of action, its fourth cause of action also fails to state a claim for which relief can be granted. See infra Part IV.B.

## A
### Nereida's Third Cause Of Action Fails To State A Claim For Which Relief Can Be Granted

Nereida's third cause of action alleges that the presumption of reimbursement, which it attributes to Customs, worked a deprivation of property unaccompanied by the procedural protections required by the due process clause of the Fifth Amendment to the U.S. Constitution. See Complaint ¶¶ 43-52.  Defendant challenges this cause of action with an expansive reading of

---

[4] At oral argument, the court directed the parties to review whether 28 U.S.C. § 1581(a) is the appropriate jurisdictional basis for each of the specific claims encompassed by Nereida's four causes of action. February 8, 2010 Oral Argument at 11:02:03-11:02:47.

Federal Circuit precedent that would erect a firewall between foreign trade and Fifth Amendment due process. See Defendant's Memo at 4-5 ("Because Nereida's claims are based upon the imposition of tariffs . . . there can be no taking of property without due process of law.").

Federal Circuit precedent reflects a more nuanced approach to questions of constitutional due process.  "Indisputably, engaging in foreign commerce is not a fundamental right protected by notions of substantive due process. . . .  Nonetheless, an importer may be entitled to procedural due process regarding the resolution of disputed facts involved in a case of foreign commerce when the importer faces a deprivation of 'life, liberty, or property' by the Federal Government." NEC Corp. v. United States, 151 F.3d 1361, 1369-70 (Fed. Cir. 1998); cf. Transcom, Inc. v. United States, 24 CIT 1253, 1272, 121 F. Supp. 2d 690 (2000) ("It is impossible to comprehend how an importer's lack of vested right to import merchandise in the future negates the obligation to provide the importer with notice prior to imposing an antidumping duty for the merchandise already imported.  The Court shares [the importer's] bewilderment [and] shall not entertain [the government's] argument since it fails to differentiate between substantive and procedural Due Process claims and lacks any merit."), aff'd, 294 F.3d 1371 (Fed. Cir. 2002).

"It is well established that when considering a procedural due process issue, 'the court must first determine whether a protected property or liberty interest exists, and if such an interest exists, then determine what procedures are necessary to protect that interest.'" Int'l Trading Co. v. United States, 24 CIT 596, 609, 110 F. Supp. 2d 977 (2000) (quoting Techsnabexport, Ltd. v. United States, 16 CIT 420, 426, 795 F. Supp. 428 (1992) (citing Am. Ass'n of Exporters & Importers v. United States, 751 F.2d 1239, 1250 (Fed. Cir. 1985)) (additional citation omitted)), aff'd, 281 F.3d 1268 (Fed. Cir. 2008).  This court has previously recognized that trade statutes

give rise to protected interests in some circumstances. See, e.g., Int'l Custom Prods., 549 F. Supp. 2d at 1396; Int'l Trading, 24 CIT at 610; Techsnabexport, 16 CIT at 427 (citing examples). Like the Federal Circuit in NEC Corp., 151 F.3d at 1371, this court has also declined to determine whether a protected interest exists in other circumstances, see Techsnabexport, 16 CIT at 427-28.

Gilda Industries v. United States, 446 F.3d 1271 (Fed. Cir. 2006), does not compel a departure from this careful approach to procedural due process. In that case, the Federal Circuit held that the U.S. Trade Representative's continuation of a retaliatory tariff on toasted breads from the European Community "did not deprive [the importer] of a property interest as to which it was entitled to additional procedural protections as a matter of constitutional due process." Gilda Indus., 446 F.3d at 1284. This holding is consistent with the longstanding recognition that importers lack a protected interest in the future importation of goods at a particular tariff rate, see Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 297, 318-19, 53 S. Ct. 350, 77 L. Ed. 796 (1933) (upholding a new tariff rate on goods subsequently imported), and does not preclude a protected interest in the proper assessment of tariffs on goods already imported.

On the assumption that Nereida has such an interest, "the question that remains . . . is what process is due." NEC Corp., 151 F.3d at 1371. "Procedural due process is not an inflexible, absolute standard." Techsnabexport, 16 CIT at 427 (citing Board of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 86, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978)). "[T]he essential elements of due process are notice and the opportunity to be heard. The test is one of fundamental fairness in light of the total circumstances." Id. at 427-28 (citations and quotations omitted).

Nereida has not pled facts that show any deprivation of either notice or the opportunity to be heard. To the contrary, Nereida concedes facts that show both of these elements. The Notice

of Action put Nereida on notice that Customs intended to liquidate the subject entry pursuant to the AD Order. See Complaint ¶ 16. Nereida subsequently failed to take advantage of its opportunity to be heard when it "inadvertently neglected to file" the required certificate of non-reimbursement prior to liquidation. Complaint ¶ 18.

The additional facts pled by Nereida do not change this analysis. Nereida alleges that, two months after liquidation, Customs directed it to file a certificate of non-reimbursement. See id. ¶ 19. However, a directive that Customs issued after liquidation could not have affected the process that Customs provided prior to liquidation. Moreover, Nereida does not allege, and the court cannot reasonably infer, that Customs issued a similar directive prior to liquidation. See id. ¶¶ 1-62.

Nereida also alleges that it "was never reimbursed its [antidumping duty] assessment by Mekonimex or any other party." Id. ¶ 18. However, its asserted property interest does not here excuse its noncompliance with a deadline of which it had notice. In decisions involving a different Commerce regulation, this court has held that procedural due process does not require the acceptance of an untimely submission. See Seattle Marine Fishing Supply Co. v. United States, 12 CIT 60, 74-77, 679 F. Supp. 1119 (1988) (upholding Commerce's rejection of untimely responses to a questionnaire); Kerr-McGee Chem. Corp. v. United States, 21 CIT 11, 20, 955 F. Supp. 1466 (1997) (describing decisions upholding the rejection of untimely information from the administrative record); cf. Charles Alan Wright & Charles H. Koch, Jr., 33 Federal Practice and Procedure: Judicial Review § 8303 (1st Ed. 2009) ("Only the most extreme excuse will justify missing a deadline" to seek judicial review of agency action.). Because Nereida has not pled facts that show a deprivation of constitutional due process, its third cause of action fails to state a claim for which relief can be granted.

## B
## Nereida's Fourth Cause Of Action Fails To State A Claim For Which Relief Can Be Granted

Nereida's fourth cause of action challenges the assessment of antidumping duties, the selection of the antidumping duty margin, the presumption of reimbursement, and the doubling of antidumping duties. See Complaint ¶¶ 57-61. Like the corresponding portions of the other causes of action, the fourth cause attributes these determinations to Customs and alleges that they were factually or legally erroneous. See id. Unlike the corresponding portions of the other causes, the fourth cause explicitly relies on the APA's judicial review provisions. See id. ¶¶ 55-56.

The APA's judicial review provisions recognize that specific statutes may govern the review of particular agency actions. The APA provisions apply "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Id. § 702. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Id. § 704. "The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute. . . ." Id. § 703.

These provisions are consistent with actions under this court's 28 U.S.C. § 1581(a) jurisdiction. The denial of a valid protest by Customs is "made reviewable by statute." Id. § 704; see 19 U.S.C. § 1514(a). In turn, 28 U.S.C. §§ 2631-2646 establish the "special statutory review proceeding" for an action seeking such a review. 5 U.S.C. § 703; see, e.g., 28 U.S.C. §§ 2631, 2632, 2636, 2640, 2643 (specifying, respectively, persons entitled to commence an action,

12

procedures to commence an action, time limitations, standards of review, and forms of relief). Accordingly, when jurisdiction is invoked under 28 U.S.C. § 1581(a), a generalized right of action under the APA would appear to be dependent on and coterminous with a more specific right of action under 19 U.S.C. § 1514(a).

Defendant argues that 19 U.S.C. § 1514 displaces the APA's judicial review provisions and that the fourth cause of action's reliance on these provisions is therefore fatal. See Defendant's Memo at 5-6; Defendant's Reply in Support of Its Motion to Dismiss ("Defendant's Reply") at 6-7. Volkswagen of America, Inc. v. United States, 532 F.3d 1365 (Fed. Cir. 2008), on which Defendant bases its argument, addressed a different circumstance under this court's 28 U.S.C. § 1581(i) jurisdiction. The plaintiff in that case "invoke[d] a Customs regulation, 19 C.F.R. § 158.12, as a cause of action independent from the protest procedures in 19 U.S.C. § 1514." Volkswagen, 532 F.3d at 1367. The Federal Circuit determined that jurisdiction under 28 U.S.C. § 1581(i) was appropriate, in part because the plaintiff "could not have filed a valid protest under" 28 U.S.C. § 1581(a). Id. at 1369 (describing this court's holding), 1374. It then determined that the plaintiff's right of action actually fell under the APA but that, pursuant to 5 U.S.C. § 701(a)(1), 19 U.S.C. § 1514 precluded such an "independent cause of action." Id. at 1369, 1373, 1374; see also Volkswagen of Am., Inc. v. United States, 540 F.3d 1324, 1331 n.2 (Fed. Cir. 2008) ("[Volkswagen, 532 F.3d at 1369,] held that 19 C.F.R. § 158.12 does not create a separate cause of action for [the allowance sought by the plaintiff], and that the only cause of action for such an allowance must be made pursuant to the procedures set forth in 19 U.S.C. § 1514."). The Federal Circuit explained that recognition of that "independent cause of action" would "frustrate" 19 U.S.C. § 1514's "'single, continuous procedure for deciding all issues in

any entry of merchandise.'" Volkswagen, 532 F.3d at 1373 (quoting S. Rep. No. 91-576 at 11 (1969)).

In contrast, the fourth cause of action would appear to be dependent on and consistent with the single procedure specified by 19 U.S.C. § 1514. Pursuant to that procedure, Nereida protested the liquidation of the subject entry along with "[f]indings related to liquidation." Volkswagen, 532 F.3d at 1370. After Customs denied its protest, Nereida invoked this court's 28 U.S.C. § 1581(a) jurisdiction in order to obtain the "special statutory review proceeding relevant to" decisions of Customs. 5 U.S.C. § 703. On this view, the fourth cause would be merely a redundant reference to that proceeding. See Complaint at 4-5, ¶¶ 23-33 ("First Cause of Action: Incorrect Liquidation"), 5-6, ¶¶ 34-42 ("Second Cause of Action: Incorrect Duty Assessment").

However, Nereida has implied that its fourth cause of action is distinct from rather than duplicative of its other causes of action. In its Complaint, Nereida asserted this cause separately, labeled it "violation" of the APA, and described it through exclusive reference to the APA's general judicial review provisions. See Complaint at 8, ¶¶ 53-61. Moreover, at oral argument, Nereida characterized the cause as an "alternative" basis for relief. See February 8, 2010 Oral Argument at 11:22:40-11:23:19.

Since the fourth cause of action accordingly asserts an independent APA right of action, it must fail for two reasons. First, Nereida has not demonstrated that the actions it attributes to Customs fall beyond 5 U.S.C. § 704's first prong ("[a]gency action made reviewable by statute") and under U.S.C. § 704's second prong ("final agency action for which there is no other adequate remedy in a court"). See Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim Under U.S. CIT R. 12(b)5 ("Nereida's Opposition") at 7-

9. Second, even if Nereida had situated those actions under the second prong, it has not demonstrated that recognition of an "independent cause of action" would not "frustrate" 19 U.S.C. § 1514. Volkswagen, 532 F.3d at 1373; see Nereida's Opposition at 7-9. In short, Nereida has distinguished the fourth cause of action too much from its other causes of action and too little from Volkswagen, 532 F.3d 1365. Because Nereida has not demonstrated that its facts support an independent APA right of action, its fourth cause of action fails to state a claim for which relief can be granted.

## V
## CONCLUSION

For the reasons stated above, Defendant's Motion is GRANTED and Nereida's third and fourth causes of action are DISMISSED.

                                        __/s/ Evan J. Wallach____
                                        Evan J. Wallach, Judge

Dated: March 12, 2010
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NEREIDA TRADING CO., INC., | |
| Plaintiff, | |
| | Before:    WALLACH, Judge |
| v. | Court No.:  06-00194 |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## **ORDER**

Defendant's Motion to Dismiss the third and fourth causes of action in Plaintiff's Complaint ("Defendant's Motion") having come before the court; the court having reviewed all papers and pleadings on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED that Defendant's Motion is GRANTED; and it is further

ORDERED that the third and fourth causes of action in Plaintiff's Complaint are dismissed for failure to state a claim for which relief can be granted.

__/s/ Evan J. Wallach____
Evan J. Wallach, Judge

Dated: March 12, 2010
        New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                     Deputy Clerk